UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――― X
AMERICAN EUROPEAN INSURANCE CO.,

              Plaintiff,

    v.

CONGREGATION HOREI BESOMIM STREE,
and DAVID GELDZAHLER,

              Defendants.
―――――――――――――――――――――――――― X

**REPORT & RECOMMENDATION**

23-CV-2443 (RER) (LKE)

**LARA K. ESHKENAZI, United States Magistrate Judge:**

Before the Court is the motion of Plaintiff American European Insurance Co. ("AEIC") for default judgment against Defendants Congregation Horei Besomim Stree and David Geldzahler ("Defendants"). For the reasons set forth below, the Court respectfully recommends granting Plaintiff's motion.

**I.    BACKGROUND**

The following facts are taken from the Complaint (ECF 1) and AEIC's Motion for Default Judgment (AEIC Mot. for Default Judgment ("AEIC Mot."), ECF 24), and they are assumed to be true for the purposes of this motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (holding that in light of a defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in its favor).

**A.    Factual Allegations**

AEIC is a New Jersey corporation that issued a commercial general liability insurance policy to Defendant Congregation Horei Besomim Stree (the "Congregation"), located at 1135 54th Street, Brooklyn, New York, 11219, from April 26, 2020, to April 26, 2021. (Compl. ¶¶ 2, 12,

13, ECF 1.) The insurance policy (the "Policy") describes the Congregation as a "house of worship." (AEIC Mot. for Default Judgment ("AEIC Mot.") Ex. A at 2, ECF 24-5.) Defendant David Geldzahler ("Geldzahler") is a rabbi who lived on the Congregation's premises. (AEIC Mot., Aff. of David Johnson ("Johnson Aff.") ¶ 16, ECF 24-4.) On or about November 2, 2020, Geldzahler was injured after falling twelve feet through a section of recently replaced flooring. (AEIC Mot., Ex. D at 2, ECF 24-8; *see* Compl. ¶ 10.) Geldzahler subsequently filed suit against the Congregation on March 14, 2022, in Kings County Supreme Court ("the Underlying Action"). (*See* Compl. Ex. A Summons and Compl. in Underlying Action, ECF 1-1.)

On May 5, 2022, AEIC received an Acord form[1] with a copy of the Summons and Complaint in the Underlying Action and sent an acknowledgment letter to the Congregation indicating that the claim would be investigated. (Johnson Aff. ¶¶ 13, 15.) The Congregation represented to AEIC that it was unaware of any information relating to the Underlying Action. (*Id.* ¶14.) AEIC retained a defense counsel to represent the Congregation in the Underlying Action, subject to any information that may arise during the course of the lawsuit. (*Id.*)

On July 25, 2022, AEIC's investigator spoke with Chaim Geldzahler ("Chaim"), the Congregation's listed point of contact, who stated that he "runs the office" of the Congregation and that Geldzahler is a rabbi who lives in a single rental unit on the premises, which is comprised of both the Congregation and a yeshiva school. (*Id.* ¶ 16; AEIC Mot., Ex. D at 1-2, ECF 24-8.) Chaim stated that Geldzahler does not work for the Congregation. (AEIC Mot., Ex. D at 2, ECF 24-8.) AEIC nonetheless denied coverage on July 28, 2022, based on "new information" indicating that "Geldzahler was a rabbi who lived and worked at the Congregation," which bars the claim

---

[1] "An Acord form is a standard industry form used to provide notice of liability." *First Mercury Ins. Co. v. 613 NY Inc.*, 2013 U.S. Dist. LEXIS 6047, at *4 n.4 (S.D.N.Y. Jan. 15, 2013).

2

under the Policy's "Employer's Liability" exclusion, among other reasons. (Johnson Aff. ¶ 18; AEIC Mot., Ex. E at 1-2, ECF 24-9.)

In November 2022, AEIC attempted to further investigate the claim, but the Congregation "refused to provide any information and/or ignored [AEIC's] requests, and would not allow for a site investigation despite multiple requests to do so." (Johnson Aff. ¶ 19.) AEIC notified the Congregation that pursuant to the Policy, the Congregation was required to cooperate in the investigation and defense of the Underlying Action. (*Id.* ¶¶ 20-21.) On February 28, 2023, Geldzahler's daughter informed AEIC that the Congregation's yeshiva "moved to a larger location and that [Geldzahler] is the full time head Rabbi of the school." (*Id.* ¶ 22; AEIC Mot., Ex. H, ECF 24-12.)

In the Underlying Action, the Congregation deposed Geldzahler on April 5, 2024. (Johnson Aff. ¶ 27; *see* AEIC Mot., Ex. J Geldzahler Dep. Transcript, ECF 24-14.) Geldzahler testified that he lived on the Congregation's premises for over twenty years, and it was his idea to establish the yeshiva. (Johnson Aff. ¶ 28; AEIC Mot., Ex. J Geldzahler Dep. Transcript 14:11-14:13, 36:12-36:13, 39:6, ECF 24-8.) Geldzahler further testified that he is a rabbi, and that he gave lectures at the yeshiva, but denied receiving any income, compensation, or rent reductions from the Congregation. (AEIC Mot., Ex. J Geldzahler Dep. Transcript 28:12, 51:19, 55:21, 68:21-69:8.)

B.     **Procedural History**

On March 30, 2023, AEIC filed a Complaint against Defendants, seeking a judgment declaring that it has no duty to defend or indemnify Defendants as to any claims asserted in the Underlying Action and any lawsuits arising from the accident. (Compl. ¶¶ 19-21.) On April 27, 2023, Geldzahler was served personally at his residence. (Aff. of Service on Geldzahler, ECF 9.) AEIC also attempted to serve the Congregation on the same day, by serving Geldzahler as an

3

authorized agent. (Aff. of Service on the Congregation, ECF 8.) No answers were filed. On June 2, 2023, AEIC attempted to re-serve the Congregation by serving Boris Ilowitz, who stated that he was authorized to accept service on behalf of the Congregation. (AEIC's Status Report at 2, ECF 11 (AEIC's "process server reported that Chaim Geldzahler was unavailable but … Boris Ilowitz was found at the Congregation's address, [and] represented that Chaim was not there, [but] that he … was in charge and authorized to accept service"); Aff. of Service on Ilowitz, ECF 10.) After Defendants failed to answer or otherwise respond, AEIC requested a certificate of default. (Req. for Cert. of Default, ECF 13.) The Clerk of Court entered default against Defendants (ECF 14), and AEIC subsequently filed a motion for default judgment (ECF 24). The Honorable Ramón E. Reyes, Jr. referred the motion to the undersigned for a report and recommendation. (Order, May 8, 2025.)

## II.   JURISDICTION AND VENUE

### A.   Subject Matter Jurisdiction

AEIC seeks a declaratory judgment under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201. (Civil Cover Sheet at 1, ECF 1-2; Compl. ¶ 4.) The DJA does not confer subject matter jurisdiction on its own, so there must be an independent basis for federal jurisdiction. *Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.*, 116 F.4th 106, 113 (2d Cir. 2024). AEIC claims diversity as the basis of jurisdiction. (Compl. ¶ 4.) "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000… and is between… citizens of different states." 28 U.S.C. § 1332(a). A corporation is deemed a citizen of any state by which it has been incorporated and of the state where it has its principal place of business. *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012). Here, Plaintiff is a New Jersey insurance corporation

4

with its principal place of business in New Jersey. (Compl. ¶ 1.) The Congregation is a corporation with its principal place of business in New York. (*Id.* ¶ 2.) Geldzahler is a resident and citizen of New York. (*Id.* ¶ 3.) As such, Plaintiff and Defendants are citizens of different states, satisfying the requirement for complete diversity. *See Madison Stock Transfer, Inc. v. Exlites Holdings Int'l, Inc.*, 368 F. Supp. 3d 460, 475 (E.D.N.Y. 2019).

In actions for declaratory judgment, "the amount in controversy is measured by the value of the object of the litigation." *Wash. Nat'l Ins. Co. v. OBEX Grp.* LLC, 958 F.3d 126, 131 (2d Cir. 2020); *see Am. Safety Cas. Ins. Co. v. 385 Onderdonk Ave., LLC*, 124 F. Supp. 3d 237, 243 (E.D.N.Y. 2015) (holding that if the insurer did not prevail in its declaratory judgment action, the insurer would have a duty to indemnify or defend the insured for the amount in the underlying action). Here, the complaint in the Underlying Action states that "[Geldzahler] is entitled to damages in the sum which exceeds the sum or value established by 28 USC § 1332(a) exclusive of interests and costs." (*See* Compl. Ex. A ¶ 28.) As such, if Geldzahler prevails, AEIC may have a duty to indemnify or defend the Congregation as its insured to damages in excess of $75,000. Under the Policy, there is a general aggregate limit of $2,000,000 and a personal and advertising injury limit of $1,000,000. (AEIC Mot., Ex. A. at 7, ECF 24-5.) AEIC's potential liability therefore meets the amount in controversy requirement. *See Am. Eur. Ins. Co. v. Tri State Plumbing & Heating Inc.*, No. 21-cv-725 (MKB) (PK), 2022 U.S. Dist. LEXIS 167154, at *10-11 (E.D.N.Y. Sept. 15, 2022) (finding that the object of litigation was the insurer's obligations under its policies, which exceeded the statutory amount in controversy). Accordingly, the Court has subject matter jurisdiction over AEIC's claim.

### B. Service of Process

"For a federal court to exercise personal jurisdiction over a defendant, the plaintiff's service of process upon the defendant must have been procedurally proper." *Windward Bora LLC v. Valencia*, No. 19-cv-4147 (NGG) (RER), 2020 WL 6470293, at *2 (E.D.N.Y. Oct. 16, 2020), *adopted by* 2020 WL 6450286 (E.D.N.Y. Nov. 3, 2020). "Courts are authorized to enter default judgment even against anonymous defendants as long as service of process is reasonably calculated to give notice." *Microsoft Corp. v. Does 1-2*, No. 20-cv-1217 (LDH) (RER), 2021 WL 4755518, at *4 (E.D.N.Y. May 28, 2021), *report and recommendation adopted*, 2021 WL 4260665 (E.D.N.Y. Sept. 20, 2021) (internal quotation omitted).

Federal Rule of Civil Procedure 4(e)(1) states that an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." A corporate defendant must be served "in the manner prescribed by Rule 4(e)(1) for serving an individual" or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and–if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1); *see* N.Y. C.P.L.R. § 311. "A managing agent or general agent is one who is empowered with supervisory authority and possesses judgment and discretion to take action on behalf of the corporation." *Farquharson v. Barnes & Noble, Inc.*, No. 17-cv-300 (KAM) (CLP), 2018 WL 11486486, at *3 (E.D.N.Y. Mar. 5, 2018). While New York law requires business corporations to designate the secretary of state as an agent for service of process, N.Y. Bus. Corp. Law § 304(a), service on the secretary of state is not permitted for domestic religious corporations. *See Hamill v. Glad Tidings Tabernacle, Inc.*, No. 110070/10, 2014 N.Y. Misc.

6

LEXIS 270, at *6 (N.Y. Sup. Ct. Jan. 2, 2014); *Mortg. Elec. Registration Sys., Inc. v. Congregation Shoneh Halochos*, 189 A.D.3d 820, 821-23 (N.Y. App. Div. 2020).

Here, the Court has personal jurisdiction over Defendants. First, AEIC properly served Geldzahler by personally delivering copies of the Summons and Complaint to him at his residence. (Aff. of Service on Geldzahler, ECF 9.) Second, AEIC personally served the Congregation through Boris Ilowitz, who represented that he was authorized to accept service on its behalf. (AEIC's Status Report at 2, ECF 11; Aff. of Service on Ilowitz, ECF 10); *See DCH Auto Group (USA), Inc. v. Fit You Best Auto., Inc.*, No. 05-cv-2973 (NG) (JMA), 2007 WL 2693848, at *4 (E.D.N.Y. Sept. 12, 2007) (holding that service of process was sufficient where the person served was at the defendant corporation's place of business, represented himself as an employee, and accepted process on behalf of the corporation); *see also Fashion Page, Ltd. v. Zurich Ins. Co., et al.*, 50 N.Y.2d 265, 272 (N.Y. 1980) (holding that the process server cannot be expected to know the corporation's internal practices and a process server may rely upon employees' representations of persons authorized to accept service); *Cirillo v. United States of Am., Inc.*, 466 N.Y.S.2d 206, 210 (N.Y. Sup. Ct. 1983) (holding that a "corporation cannot evade jurisdiction when it has created the impression that the person served was a proper person to receive service").

### C. Venue

"[A] civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). A corporation is deemed to be a resident of "any district" in "a state which has more than one judicial district and in which . . . [that] corporation is subject to personal jurisdiction at the time an action is commenced." 28 U.S.C. § 1391(d). As alleged, Geldzahler is a resident of Brooklyn, New York, and the Congregation is a New York religious corporation with a principal place of business in

7

Brooklyn, New York. (Compl. ¶¶ 2-3; Compl. Ex. A ¶ 4, ECF 1-1.) Therefore, venue in New York is proper. *See* 28 U.S.C. § 1391(b)(1).

### III. DEFAULT JUDGMENT STANDARD

Under Rule 55 of the Federal Rules of Civil Procedure, there are two steps to entering a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). Second, after the Clerk of the Court enters a defendant's default, the plaintiff must apply to the court for a default judgment. *See* Fed R. Civ. P. 55(b).

Here, on July 13, 2023, the Clerk of Court entered default against Defendants after Defendants failed to respond to the Complaint or otherwise appear in this action. (ECF 14.) To date, Defendants have not appeared or moved to vacate the entry of default.

The Court has discretion on whether to enter a default judgment. *Enron Oil Corp*, 10 F.3d at 95. When evaluating a plaintiff's application for a default judgment, "a court is required to accept all [of the moving party's] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel*, 577 F.3d at 84. Then, the Court "must determine whether the plaintiff's allegations establish the defendant's liability 'as a matter of law.'" *Farmers New Century Ins. Co. v. Peruggia*, No. 18-cv-1965 (ADS) (SIL), 2020 WL 3964715, at *2 (E.D.N.Y. June 22, 2020), *adopted by* 2020 WL 3960519 (E.D.N.Y. July 13, 2020). The Court is responsible for ensuring that the "factual allegations provide a proper basis for liability and relief." *Santander Bank, N.A. v. Bison Expedite Inc.*, No. 23-cv-6233 (NRM) (ST), 2025 WL 1640545, at *2 (E.D.N.Y. Jan. 30,

8

2025) (quoting *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010)).

"[A] default judgment is an extreme remedy that should only be granted as a last resort." *Bravado Intern. Grp. Merch. Servs, Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 186 (E.D.N.Y. 2009). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] ... delay and clog its calendar," it has held that a district court must balance that interest with its responsibility to "afford litigants a reasonable chance to be heard." *Enron Oil Corp.*, 10 F.3d at 95-96. "[W]hen doubt exists as to whether a default should be granted or vacated, the doubt should be decided in favor of the defaulting party." *Id.* at 96. Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because defendants are in default. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

Once the Clerk of the Court enters a certificate of default, a defendant is deemed to have admitted the well-pled allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). A fact is not considered well-pled, however, "if it is inconsistent with [the] other allegations of the complaint or with facts of which the court can take judicial notice, or is contrary to uncontroverted material in the file of the case." *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-cv-3259 (NGG) (RLM), 2013 WL 3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (citations omitted). Ultimately, whether to grant a motion for default judgment is "left to the [court's] sound discretion." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999).

"In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default." *Double Green Produce, Inc. v. Forum Supermarket Inc.*, No. 18-cv-2660 (MKB)(SJB), 2019 WL 1387538, at *2 (E.D.N.Y. Jan. 29, 2019). "These factors are 1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Id.* at *2 (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-cv-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)).

As to the first factor, willfulness is sufficiently demonstrated by a defendant's failure to appear or respond. *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-cv-0946 (JS) (AKT), 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) (holding that defendant's default was willful when he failed to respond to the complaint after being served with process and had been given notice by the plaintiff that it planned to move for entry of default). Here, Defendants did not respond to the Complaint despite proper service, nor did they respond when AEIC served them copies of the instant motion. Accordingly, Defendants' conduct demonstrates willful default.

As to the second factor, Defendants' failure to appear in this action has left the Court unable to assess whether they have a meritorious defense. *See United States. v. Myers*, 236 F. Supp. 3d 702, 707 (E.D.N.Y. 2017) ("where a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which weighs in favors of granting a default judgment"). Accordingly, this factor weighs in favor of granting a default judgment.

As for prejudice to the moving party, AEIC "would be prejudiced if the motion for default were to be denied." *Id.* at 708. If denied, AEIC would be "unable to secure a declaration as to its

10

duty to defend or indemnify the defendants" with respect to the Underlying Action. *See Falls Lake Nat'l Ins. Co. v. BNH Const. (NY) Inc.*, No. 24-cv-4244 (RPK) (JPM), 2025 WL 925826, at *9 (E.D.N.Y. Mar. 27, 2025) (holding that the insurance company would suffer prejudice if it were unable to secure a declaratory judgment that releases it from the obligation to defend or indemnify the defaulting party). Based on the foregoing, entry of default judgment is permissible.

The Court now assesses whether Plaintiff's allegations establish Defendants' liability.

## IV.   LIABILITY

### A.   Employee Exclusion

First, AEIC alleges that it has no obligation to indemnify or defend the Congregation or Geldzahler in the Underlying Action because the Policy excludes coverage for bodily injury of employees, barring coverage for Geldzahler. (Compl. ¶¶ 17, 19-21.) According to AEIC, Geldzahler "was at the Congregation's premises as an employee and otherwise in furtherance of its business" at the time of the accident. (Compl. ¶ 10.)

In New York, "[i]nsurance policies are contracts and are therefore interpreted according to the rules of contract interpretation." *Frazer Exton Development, L.P. v. Kemper Environmental, Ltd.*, 153 Fed. App'x 31, 32 (2d Cir. 2005). "If the provisions of a contract are unambiguous, courts should enforce them as written." *Am. Eur. Ins. Co.*, 2022 U.S. Dist. LEXIS 167154, at *13. An insurer's duty to defend is limited by the scope of insurance coverage purchased. *Pine Mgmt. v. Colony Ins. Co.*, No. 23-624-cv, 2024 U.S. App. LEXIS 7110, at *4 (2d Cir. Mar. 26, 2024) (quoting *Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004)). "To avoid the duty to defend, an insurer 'must demonstrate that the allegations of an underlying complaint place that pleading solely and entirely within the exclusions of the policy and that the allegations are subject to no other interpretation.'" *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*,

11

720 F.3d 71, 77 (2d Cir. 2013) (citation omitted). "The duty to indemnify is narrower than the duty to defend, so if there is no duty to indemnify a claim, then there is no duty to defend against it." *Am. Eur. Ins. Co.*, 2022 U.S. Dist. LEXIS 167154, at *13-14 (citing *CGS Indus., Inc.*, 720 F.3d at 77).

AEIC relies on the following exclusions and provisions, stated in relevant part:

> **2**. **Exclusions:**
> This insurance does not apply to:
>
> \*\*\*
> **e. Employer's Liability**
> "Bodily injury" to:
> (1) An "employee" of the insured arising out of and in the course of:
>     a) Employment by the insured; or
>     b) Performing duties related to the conduct of the insured's business; or
>
> \*\*\*
>
> [Definitions]
>
> 5. "Employee" includes a "leased worker." Employee does not include a "temporary worker".
> \*\*\*
> 10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".
> \*\*\*
> 19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meat seasonal or short-term workload conditions.
> \*\*\*
> 20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the discretion of and within the scope of duties determined by you, and is not paid a fee, salary, or other compensation by you or anyone else for their work performed for you
> \*\*\*

12

(Compl ¶¶ 14-15.) The Policy further provides that AEIC "will not pay expenses for 'bodily injury'… [t]o any insured, except church members who are not paid a fee, salary, or other compensation." (AEIC Mot., Ex. A at 33, ECF 24-5.) An insured includes any "[m]embers of the clergy" "but only with respect to their duties as such." (*Id.*) AEIC contends that it has properly denied coverage under these provisions because the Underlying Action "pertains to claims arising from 'bodily injury' to any employee or one who performs activities related to the business of the Congregation." (Compl. ¶ 17.) According to AEIC, the "policy exclusion applies because Geldzahler was employed by the Congregation as the founder and head of its yeshiva and injured while performing duties related to his employment." (AEIC Mot., Brief at 9, ECF 24-15.)

Even accepting Plaintiff's allegations as true, *see Finkel*, 577 F.3d at 84, Plaintiff has failed to establish that Geldzahler was injured while performing duties related to his employment. Although Plaintiff has adequately alleged that Geldzahler is a rabbi, the allegations are insufficient to support a finding that Geldzahler was performing activities relating to his duties as a rabbi or employment at the Congregation at the time of the incident. (*See* Johnson Aff. ¶ 25 (describing "newspaper articles pertaining to [Geldzahler's] work" for the Congregation); *see generally* AEIC Mot., Ex. I, ECF 24-13.) AEIC does not allege what services or duties Geldzahler was performing at the time he was injured at the Congregation, nor does AEIC define what those duties may be. While the "well-pleaded factual allegations set forth in a complaint relating to liability are deemed true," "it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Norguard Ins. Co. v. Lopez*, No. 15-cv-5032 (DRH) (AYS), 2017 U.S. Dist. LEXIS 9798, at *42-43 (E.D.N.Y. Jan. 24, 2017) ("A fact is not considered 'well-pleaded' for purposes of a motion for default judgment 'if it is inconsistent with other allegations of the complaint or with facts of which the

13

court can take judicial notice.'" (citation omitted)); *see, e.g.*, *Park v. Sancia Healthcare Inc.*, No. 17-cv-00720, 2020 U.S. Dist. LEXIS 109676, at *12-13 (S.D.N.Y. June 23, 2020) (finding that plaintiff's allegations were "simply insufficient to enter a default judgment" because plaintiff "fail[ed] to include any allegations …. that the [i]ndividual [d]efendants had any control over employees … as is required to extend liability").

AEIC argues that because Geldzahler "was the head of the insured yeshiva and was not at his apartment, but was inside the insured premises performing duties related to his position … it is indisputable" that Geldzahler's claims arise from injuries that occurred in the course of his employment. (AEIC Mot., Brief at 12, ECF 24-15.) However, in the Underlying Action's complaint, Geldzahler only alleges that he was injured while lawfully on the premises. (Compl. Ex. A ¶¶ 23-24.) Further, during his deposition, which Plaintiff submits in support of its motion, Geldzahler testified that "all services and lectures [were] cancelled" at the Congregation's synagogue because of the ongoing construction, including on the day of the incident. (AEIC Mot., Ex. J Geldzahler Dep. Transcript 95:1-95:19, ECF 24-14.) As such, Plaintiff's allegations and submissions in support of its motion fail to provide a sufficient factual record for the Court to determine whether Geldzahler was injured during the performance of his duties as an employee or member of the clergy.

### B.  **Breach of the Duty to Cooperate**

Next, AEIC contends that the Congregation failed to provide timely notice of the incident when it occurred, and failed to cooperate with the coverage investigation, providing grounds for AEIC to disclaim coverage under the Policy. (*See* Compl. ¶¶ 18-19; AEIC Mot., Brief at 15, ECF 24-15).

Pursuant to the Policy, the Congregation is required to notify AEIC "as soon as practicable of an 'occurrence' or an offense which may result in a claim." (Compl. ¶ 18.) Further, "[i]f a claim is made or 'suit' is brought against any insured, [the Congregation] must (1) [i]mmediately record the specifics of the claim or 'suit' and the date received; and (2) [n]otify [AEIC] as soon as practicable." (*Id.*) The Congregation is required to "[c]ooperate with [AEIC] in the investigation, for settlement of the claim or defense against the 'suit,'" and allow AEIC to "obtain records and other information." (*Id.*) AEIC "reserves the right to deny coverage" for the failure to cooperate. (AEIC Mot., Ex. E at 13, ECF 24-9.)

Under New York law, for an insurance carrier to "deny insurance coverage based upon lack of cooperation, an insurance carrier must demonstrate (1) that it acted diligently in seeking to bring about the insured's cooperation, (2) that the efforts employed by the carrier were reasonably calculated to obtain the insured's cooperation, and (3) that the attitude of the insured… was one of willful and avowed obstruction." *SCW West LLC v. Westport Ins. Corp.*, 856 F. Supp. 2d 514, 522 (E.D.N.Y. 2012). A breach of the obligation to cooperate "constitutes a material breach of the insurance contract and a defense to indemnification under the policy." *Id.* at 523.

AEIC has established that it acted diligently in seeking to bring about the Congregation's cooperation. On May 5, 2022, AEIC received the Acord form, providing notice of the claims in the Underlying Action. (Johnson Aff. ¶¶ 13, 15.) On that same day, AEIC sent the Congregation an acknowledgement letter, informing the Congregation that AEIC would begin investigating and that the Congregation would be contacted. (*Id.* ¶ 15.) On May 10, 2022, AEIC assigned an investigations agency to contact the Congregation, but the Congregation was unresponsive to multiple calls and emails for weeks. (*Id.* ¶ 16.) On July 21, 2022, when the AEIC investigator finally spoke with Chaim, the Congregation contact, Chaim stated that he was the "only one with

15

information," but he was unavailable until September. (AEIC Mot., Ex. D at 1, ECF 24-8.) Nonetheless, AEIC's investigator expressed that they would need to meet him at the Congregation for an interview, conduct a site investigation, obtain any additional information, and identify any witnesses. (*Id.* at 2-3.)

Thereafter, in an effort to move forward with the investigation, AEIC continued to contact Chaim, who stated that he was unavailable until October 23, 2022. (AEIC Mot., Ex. F at 1, ECF 24-10.) When AEIC called on October 24, 2022, Chaim expressed that he was "very busy" and "did not have time to visit the property or meet" until the following week. (*Id.*) During the following week, AEIC called and left messages without a response. (*Id.*) When AEIC finally spoke to Chaim again, he refused to meet the investigator for a site visit because the Congregation was "too far" and there was "too much traffic," but he agreed to meet for an interview at his office and make arrangements for someone else to show the site. (*Id.*) Chaim agreed to meet with AEIC on November 17, 2022, and requested that AEIC call him the day before to schedule a time. (*Id.* at 2.) On the day before and the day of the meeting, however, Chaim never responded to calls from AEIC, and the meeting never occurred. (*Id.*)

AEIC subsequently notified the Congregation in writing that its "cooperation is required under the Policy," and that its "failure to cooperate, including [its] failure to provide information and documents requested, is a breach of the Policy." (AEIC Mot., Ex. G at 2, ECF 24-11.) AEIC cautioned that "immediate cooperation is warranted" to avoid "denial of coverage, including defense and indemnification." (*Id.* at 2-3.) Since then, the Congregation has been unresponsive and uncooperative. (Johnson Aff. ¶ 21 ("To date, despite the numerous requests, the Congregation has continued to be unresponsive and has failed to cooperate in the investigation of the claim and defense of the lawsuit. Furthermore, the Congregation would not allow our agent to do a site

16

investigation.").) AEIC's multiple efforts to contact the Congregation to permit AEIC to conduct an investigation demonstrates diligence in seeking the Congregation's cooperation. *See Empire Fire & Marin Ins. Co. v. Velasquez*, No. 17-cv-2556 (CBA) (ST), 2018 WL 4346716 at *3 (E.D.N.Y. Aug. 10, 2018) (finding that the insurer acted diligently where the insurer called the insured six times in a nine-day period, mailed him seven letters for almost ten months, and rescheduled phone calls multiple times).

As to the second factor, AEIC's efforts were reasonably calculated to obtain the Congregation's cooperation. After several attempts, AEIC successfully contacted Chaim, who represented himself to be the Congregation's contact and main source of information. (AEIC Mot., Ex. D at 1-2, ECF 24-8.) Despite Chaim's unavailability from May to November 2022, AEIC accommodated his schedule, and offered to meet him at his office for an interview. (AEIC Mot., Ex. F at 1, ECF 24-10.) Chaim failed to respond and ceased to cooperate. (*Id.* at 1-2.) AEIC also sent letters to the Congregation, but the Congregation has been unresponsive. (Johnson Aff. ¶¶ 20-21.)

As to the last factor, the Court finds that Congregation's conduct was one of willful and avowed obstruction. Willful and avowed obstruction may be shown where the insured "engaged in an unreasonable and willful pattern of refusing to answer material and relevant questions or to supply material and relevant documents." *Roc Nation LLC v. HCC Int'l Ins. Co.*, 523 F. Supp. 3d 539, 555 (S.D.N.Y. 2021). As detailed above, the Congregation made no attempts to cooperate with AEIC's investigation, nor did Chaim or the Congregation provide any relevant documentation. (Johnson Aff. ¶ 21.) The Court finds no reasonable excuse for the Congregation's refusal to cooperate in AEIC's investigation. *See, e.g.*, *Empire Fire & Marine Ins. Co. v. Estrella*, No. 18-CV-3422 (KAM) (PK), 2019 U.S. Dist. LEXIS 160134, at *17 (E.D.N.Y. Sep. 13, 2019)

17

(finding no reasonable excuse for the insured's pattern of non-compliance and refusal to acknowledge or respond to the insurer's investigation); *Rosenthal v. Prudential Prop. & Cas. Co.*, 928 F.2d 493, 494-95 (2d Cir. 1991) (holding that an insured's failure to cooperate is willful when it is indicative of a pattern of noncooperation without any reasonable excuse). The Congregation's continued failure to answer or otherwise respond to this action further demonstrates that Congregation's attitude of willful and avowed obstruction. Therefore, AEIC's denial of coverage based on the Congregation's lack of cooperation is warranted.

### C. Declaratory Judgment Act

AEIC requests that the Court declare that it has no duty to defend or indemnify the Defendants in the Underlying Action. The DJA provides that a court may exercise its discretion to issue a declaratory judgment in cases where the party seeking the declaratory judgment demonstrates the existence of an actual case of controversy. *See* 28 U.S.C. § 2201-02. "Actual controversy" has been interpreted to mean that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediac[y] an[d] reality to warrant the issuance of a declaratory judgment." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969). Declaratory judgments should resolve a "real question of conflicting legal interests." *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992). The Second Circuit has emphasized that insurance coverage cases provide "the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real." *Id.* (internal quotations omitted). Courts focus on whether there is a practical likelihood that the contingency will occur. *Id.*; *see also United States Underwriters Ins. Co. v. Image By J & K, LLC*, 335 F. Supp. 3d 321, 345-46, n.17 (E.D.N.Y. 2018). "In applying the practical likelihood test, the Court focuses on whether there is pending

litigation or the likelihood of future litigation that may require Plaintiff to indemnify [defendant]." *United States Underwriters Ins. Co.*, 335 F. Supp. 3d at 345 n.17 (holding that where defendant had already filed an action against plaintiff and there was a "practical likelihood" that plaintiff would be held liable in the underlying action, the indemnification claim was ripe).

Here, AEIC has been defending the Congregation in the Underlying Action since May 2022. (Johnson Aff. ¶¶ 7, 13-14 ("AEIC assigned defense counsel, Marshall Conway Bradley Gollub & Weissman, P.C., to represent the Congregation as to the claims asserted in the [Underlying] Action."); *see also* AEIC Mot., Ex. J Geldzahler Dep. Transcript 2:8-2:12, ECF 24-14 (showing AEIC's assigned defense counsel appearing on behalf of the Congregation to take Geldzahler's deposition).) In addition, as discussed above, if Geldzahler prevails, AEIC may have a duty to indemnify or defend the Congregation as its insured to damages in excess of $75,000.

Therefore, AEIC's claim regarding its duty to defend or indemnify the Congregation is ripe, and AEIC seeks declaratory judgment to resolve an actual controversy. Accordingly, this Court respectfully recommends that declaratory judgment be entered in AEIC's favor.

## V.     CONCLUSION

Based on the foregoing, this Court respectfully recommends that the Court enter a judgment in favor of Plaintiff AEIC, declaring that AEIC has no duty to defend or indemnify Defendants the Congregation or Geldzahler in the Underlying Action.

A copy of this Report and Recommendation is being served on AEIC via ECF. The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to Defendant David Geldzahler at 1135 54th Street, Brooklyn, NY 11219, and Defendant Congregation Horei Besomim Stree at 1135 54th Street, Brooklyn, NY 11219. Plaintiff is also directed to mail a copy of this Report and Recommendation and file proof of service of mailing by December 19, 2025.

19

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge Ramón E. Reyes, Jr. If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
December 16, 2025

/s/ Lara K. Eshkenazi
LARA K. ESHKENAZI
United States Magistrate Judge